**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Joseph Lee Conley, | No. CV-22-00985-PHX-SRB |
| Petitioner, | **ORDER** |
| v. | |
| David C Shinn, et al., | |
| Respondents. | |

The Court now considers Petitioner Joseph Lee Conley's ("Petitioner") Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") and Motion for Stay of Proceedings Pending Exhaustion of State-Court Remedies ("Motion"). (Doc. 1, Pet.; Doc. 2, Mot. for Stay.) The matters were referred to Magistrate Judge Deborah M. Fine for a Report and Recommendation ("R&R"). (Doc. 18, Mot. to Stay R&R; Doc. 19, Pet. R&R.) For the following reasons, the Court overrules the Objections, adopts the R&Rs, denies the Motion, denies the Petition, and dismisses the Petition with prejudice.

**I.   BACKGROUND**

**A.   Factual Background**

The background of this case was summarized in the R&R and is incorporated herein:

> In its decision on Petitioner's direct appeal of his convictions and sentences in Maricopa County Superior Court case CR2004-035015-001, the Arizona Court of Appeals summarized the events leading to Petitioner's charges, convictions, and sentences:
>
> > In the early afternoon of May 12, 2004, [Petitioner] broke into the victim's home, located about a block away from the abandoned town house in which [Petitioner] was staying. While in the home, he used the victim's computer

intermittently to view pornographic websites. He also strung lines of transparent wire across the entrance to the hallway "as a makeshift early warning device."

The victim came home around 6:30 p.m. [Petitioner] stabbed her in the back with a butcher knife as she tried to flee out the front door. [Petitioner] then loaded the victim's vehicle with items he had taken from her home and attempted to steal it. However, he could not shift into reverse because of an interlock device that had been installed in the vehicle.

[Petitioner] then went to the abandoned town house to change clothes. After he changed he knocked on the door of a nearby town house where J.G. and J.I. lived. [Petitioner] confessed to J.G. and J.I. that he had killed a woman after breaking into her home and that he had attempted to steal items from her home as well as her vehicle but had been unable to engage the vehicle. He asked for J.G.'s and J.I.'s help.

J.G. and J.I. asked [Petitioner] to show them the home he had broken into. They drove him to the victim's home but did not go inside. J.G. and J.I. then drove [Petitioner] to the abandoned town house and dropped him off. Next, J.I. drove J.G. back to the victim's home. J.G. called the police and waited for them to arrive at the victim's home, and J.I. returned to his home.

The victim was dead when police arrived on the scene. After briefly interviewing J.G., police surrounded the abandoned town house and apprehended [Petitioner] as he attempted to escape through a window. Subsequently, the police discovered several items of evidence inside the abandoned town house linking [Petitioner] to the burglaries and the victim's murder, including a pair of blood-stained pants, the keys to the victim's home and vehicle, some jewelry, and a package of the same type of cigarettes the victim had purchased at a drug store shortly before coming home. Later testing revealed the blood on the pants came from the victim and DNA found on the waistband and zipper matched [Petitioner]. Additionally, the police discovered [Petitioner's] DNA and fingerprints on multiple items and in different locations in the victim's home and vehicle.

A Maricopa County Grand Jury returned an indictment charging [Petitioner] with one count of first-degree murder, a class one felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1105 (Supp. 2008); one count of second-degree burglary, a class four felony, in violation of A.R.S. § 131507 (2001); and one count of third-degree burglary, a class four felony, in violation of A.R.S. § 13-1506 (Supp. 2008). The case proceeded to trial, and the jury found [Petitioner] guilty on all three counts. The jury further found two aggravating factors as to each of the two burglary counts. The superior court then sentenced [Petitioner] to concurrent aggravated terms of natural life imprisonment on the first-

1
2
degree murder conviction, seven years imprisonment on the second-degree burglary conviction, and three years imprisonment on the third-degree burglary conviction.

3
4
Also as recounted by the court of appeals, Petitioner "committed the offenses just before his eighteenth birthday." During the trial court proceedings in Maricopa County Superior Court, Petitioner was represented by appointed counsel in the Maricopa County Public Defender's Office.

5
(Pet. R&R at 2–3.)

6
The R&R also recited the history of Petitioner's post-trial litigation:

7
1.  Petitioner's direct appeal

8
9
10
11
12
13
Represented by different counsel in the Maricopa County Public Defender's Office, Petitioner timely appealed his convictions and sentences. (Doc. 14-1, Ex. A, 01/02/2009 Order at 1–2, 6.) On appeal, Petitioner argued that the trial court (1) improperly denied Petitioner's request for production of the murder weapon, (2) gave an improper jury instruction, (3) improperly limited cross-examination of a witness, and (4) improperly admitted other-act evidence. (*Id.* at 1.) On January 2, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (*Id.* at 6.) The court of appeals issued its mandate on April 17, 2009. (*See* Doc. 14-1, Ex. H, 08/07/2012 Order at 1.)

14
2.  Petitioner's first PCR action

15
16
17
18
19
20
21
On May 14, 2009, Petitioner filed a *pro se* PCR notice in the superior court, in which he requested counsel be appointed to represent him. (Doc. 14-1, Ex. B, PCR Not. I at 1–5.) Through appointed counsel Michael Reeves, Petitioner filed a PCR petition on August 23, 2010. (Doc. 14-1, Ex. C, PCR Pet. I at 1–15.) In the PCR petition, Petitioner argued that the trial court abused its discretion by not granting Petitioner's request to substitute trial counsel, thereby violating Petitioner's Sixth Amendment right to counsel. (*Id.* at 7–15.) The state filed a response to the PCR petition. (Doc. 14-1, Ex. D, Rule 32 Resp. at 1–10.) On February 10, 2011, the superior court denied Petitioner's PCR petition in a minute entry stating simply that the superior court had "received and considered [Petitioner's] Petition for Post-Conviction Relief and the State's Response" and "[a]fter review, IT IS ORDERED [that Petitioner's] Petition for Post-Conviction Relief is denied." (Doc. 14-1, Ex. E, PCR Order at 1.)

22
23
24
25
26
On April 13, 2011, Petitioner filed a petition for review in the Arizona Court of Appeals. (Doc. 14-1, Ex. F, 04/20/2011 Order at 1.) On April 20, 2011, the Arizona Court of Appeals issued an order stating that Petitioner was required to file a petition for review within 30 days of the trial court's order denying Petitioner's PCR petition, but Petitioner had not done so. (*Id.* at 1–2.) The court of appeals therefore dismissed Petitioner's petition for review as untimely. (*Id.*) The record before this Court contains no evidence that Petitioner filed a motion for reconsideration in the Arizona Court of Appeals or a petition for review in the Arizona Supreme Court.

27
3.  Petitioner's second PCR action

28
On July 5, 2012, Petitioner filed a second *pro se* PCR notice and requested appointment of counsel. (Doc. 14-1, Ex. G, PCR Not. II at 1–3.) In

1

2

3

his second *pro se* PCR notice, Petitioner argued that the United States Supreme Court's June 25, 2012, decision in *Miller v. Alabama*, 567 U.S. 460 (2012), applied retroactively to Petitioner's sentence imposed in May 2007. (*Id.* at 3.)

4

5

6

7

8

On August 17, 2012, the superior court dismissed Petitioner's second PCR notice as untimely. (08/07/2012 Order at 1–2.) The superior court determined that Petitioner's second PCR notice was due to be filed by May 17, 2009, following the court of appeals' issuance of an order and a mandate on April 17, 2009, regarding Petitioner's first PCR proceedings. (*Id.* at 1.) As part of its dismissal order of the second PCR proceedings as untimely, the superior court addressed Petitioner's argument that *Miller* constituted a change in the law that would allow Petitioner's untimely PCR notice. In doing so, the superior court stated that:

9

10

11

12

13

14

15

16

> [Petitioner] claims he should be allowed to file this untimely notice based on a significant change in the law. Specifically [Petitioner] contends *Miller v. Alabama* __ U.S. __ (June 25, 2012), constitutes a significant change in the law that applies to his case. [Petitioner] states that *Miller* held that a juvenile cannot be sentenced to life imprisonment. *Miller* does not place a categorical ban on juvenile life without parole. The Supreme Court ruled out such a sentence as a mandatory requirement in murder cases. Hence, the judge or jury must have the opportunity to consider mitigating circumstances prior to imposing the harshest sentence possible for a juvenile. [Petitioner] sets forth no valid factual or legal basis to support his claim. Accordingly, [Petitioner] has failed to demonstrate that *Miller* is a significant change in the law that applies to his case.

(*Id.* at 2.)

17

18

19

Thereafter, Petitioner petitioned the Arizona Court of Appeals for review of the superior court's dismissal of his second PCR proceedings. (Doc. 14-1, Ex. I, 10/17/2013 Order at 2.) On October 17, 2013, the court of appeals granted review but denied relief, finding that:

20

21

22

23

> *Miller* did not ban the imposition of sentences to life without the possibility of parole for juveniles. Rather, *Miller* held mandatory sentences of life-without-parole for juvenile offenders violated the Eighth Amendment. [*Miller*, 132 S. Ct.] at 2464. Because [Petitioner's] sentence to natural life was not mandatory, he has failed to state a colorable claim for relief.

(*Id.* at 1–3.)

24

25

26

The court of appeals issued its mandate on December 10, 2013. The record before this Court contains no evidence that Petitioner filed a motion for reconsideration in the Arizona Court of Appeals or a petition for review in the Arizona Supreme Court.

27

28

3.   Petitioner's third PCR action

On January 6, 2017, Petitioner filed a third *pro se* PCR notice in the superior court and requested appointment of counsel. (Doc. 14-1, Ex. J, PCR

Not. III at 1–4.) In his third *pro se* PCR notice, Petitioner argued that *Miller* was retroactively applicable to his case pursuant to *Montgomery v. Louisiana*, 577 U.S. 190 (2016) and *Tatum v. Arizona*, 137 S. Ct. 11 (2016). (*Id.* at 3.) Petitioner argued that he "was entitled to a hearing where the sentencing court must decide whether the crime reflected 'transient immaturity' or 'irreparable corruption' before imposing the harshest sentence of 'natural life.'" (*Id.*)

Through different PCR counsel than in Petitioner's first PCR proceedings, Petitioner filed a third PCR petition in the superior court on March 11, 2018. (Doc. 14-1, Ex. K, PCR Pet. III at 1–8.) In his third PCR petition, Petitioner argued that *Miller* and *Montgomery* constituted a significant change in the law, entitling Petitioner to post-conviction relief and subsequent resentencing. (*Id.* at 4–8.) In response, the state initially conceded that Petitioner was entitled to an evidentiary hearing under *State v. Valencia*, 241 Ariz. 206 (2016), and Ariz. R. Crim. P. 32.8. (Doc. 14-1, Ex. L, Resp. to PCR Pet. III at 1–2.)

On September 10, 2021, the superior court dismissed Petitioner's third PCR petition and granted the state's motion to vacate the evidentiary hearing on Petitioner's claim. (Doc. 14-1, Ex. M, 09/10/2021 Order at 1–2.) The superior court determined that Petitioner was not entitled to an evidentiary hearing because Petitioner had not stated a colorable claim for relief. (*Id.*) Specifically, the superior court stated that it found:

no material issue of fact or law that would entitle [Petitioner] to relief because, as this Court already found in 2012, *Miller* was not a significant change in the law applicable to [Petitioner's] case that would probably overturn his natural life sentence. *Miller* did not place a categorical ban on juvenile life without parole. Rather the Supreme Court held that mandatory natural life sentences were unconstitutional. *Miller*, 567 U.S. at 480. Because this Court had discretion to sentence [Petitioner] to life with the possibility of release after 25 years—a sentence less than natural life—his natural life sentence was not mandatory.

*Montgomery* thereafter only made *Miller* retroactive, and thus, does not change this Court's previous finding that *Miller* was not applicable to [Petitioner] because his natural life sentence was not mandatory. *Jones* [*v. Mississippi*], 141 S. Ct. [1307] at 1314–16 [(2021)]. Nor does *Tatum v. Arizona*, change this Court's previous finding because its broadened interpretation of *Miller* by *Montgomery* was implicitly overruled by *Jones*. Likewise, *State v. Valencia*, 241 Ariz. 206 (2016)'s interpretation of *Montgomery* as clarifying or broadening *Miller*, based in part on *Tatum*, was implicitly overruled by *Jones*. *Jones* clarified that *Miller* was narrow and that a natural life sentence for juveniles is constitutional "only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment." 141 S. Ct. at 1314 (quoting *Miller*, 567 U.S. at 476.) *See also State v. Soto-Fong*, 474 P.3d 34, 40, ¶¶ 19, 22–23 (2020) (confirming *Jones*'s narrow interpretation of *Miller*, that a sentencer must only "consider 'an offender's youth and attendant characteristics' before sentencing a juvenile to life without the possible of parole," and agreeing with Justice Scalia's dissent in *Montgomery* that *Miller*'s holding was

narrow and "merely mandated that trial courts 'follow a certain process— considering an offender's youth and attendant characteristics—before imposing a particular penalty.'").

Even assuming, without deciding, that *Miller* represents a significant change in the law applicable to [Petitioner], it would not probably overturn his natural life sentence because this Court considered [Petitioner's] "youth and attendant characteristics" before imposing the sentence. *Jones*, 141 S. Ct. at 1313, 1316. This is all *Miller* requires. *Id. Miller* does not require a "sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence," find that [Petitioner] is the "rarest of juvenile offenders," or provide any on-the-record sentencing explanation. *Id.* at 1319–21. And "*Montgomery* did not purport to add to *Miller*'s requirements." *Id.* at 1316. Thus, even assuming *Miller* applied to [Petitioner's] case, *Miller* was satisfied when this Court considered [Petitioner's] youth and attendant characteristics as outlined in *Miller*. 567 U.S. at 477–78.

(*Id.*)

On October 8, 2021, through PCR counsel, Petitioner moved for reconsideration of the superior court's denial of relief, arguing that *Jones v. Mississippi* did not affect Petitioner's case; that Petitioner was sentenced under a mandatory sentencing scheme; and that Petitioner was entitled to an evidentiary hearing. (Doc. 14-1, Ex. N, Mot. for Reconsideration at 1–6.) The superior court denied Petitioner's motion for reconsideration on June 9, 2022, finding no good cause for reconsideration. (Doc. 14-1, Ex. O, 06/09/2022 Order.)

On June 14, 2022, through PCR counsel, Petitioner filed a petition for review in the court of appeals, challenging the superior court's dismissal of his PCR petition and denial of his motion for reconsideration. (Doc. 14-1, Ex. P, Pet. for Review at 1–9.) Petitioner's petition for review remains pending in the state courts. (*See* Mot. for Stay at 1; Doc. 15, Resp. to Mot. for Stay at 5.)

Petitioner's Habeas Claim

Petitioner asserts one ground for relief in his June 7, 2022, Petition: that his "natural life sentence, imposed for crimes committed when he was a juvenile, violates the Eighth Amendment as articulated in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016)." (Pet. at 21–26.) Petitioner argues that the Arizona legislature's enactment of Arizona Revised Statutes § 13-716, providing parole eligibility for juvenile offenders following the completion of mandatory minimum terms, did not apply to Petitioner and did not cure the *Miller* violation in his case. (*Id.* at 24–25.) Petitioner argues that he is entitled to a new sentencing hearing because Petitioner's sentencing court did not consider the effect of "youth and its attendant characteristics[.]" (*Id.* at 25–26.) In their Limited Answer to the Petition, Respondents assert one defense: that Petitioner's Petition is time-barred under 28 U.S.C. § 2244(d)(1)(A) and 28 U.S.C. § 2244(d)(1)(C) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (Doc. 15, Ans. at 5–8.) Respondents argue that for purposes of 28 U.S.C. § 2244(d)(1)(C), AEDPA's one year limitations period began on the issuance of *Miller*, not *Montgomery*. (*Id.*) In reply, Petitioner argues that *Montgomery* and the Arizona Supreme Court's decision in *State v. Valencia*, 241 Ariz. 206 (2016), required the state court to provide an evidentiary hearing in

1
2
3

Petitioner's case. (Doc. 16, Reply to Resp. at 1–4.) Petitioner asserts that the state courts could not decide his constitutional claim prior to Supreme Court precedent on such an issue. (*Id.* at 4.) In essence, Petitioner argues that for purposes of 28 U.S.C. § 2244(d)(1)(C), AEDPA's statute of limitations began on the issuance of *Montgomery*, not *Miller*.

4

(Pet. R&R at 3–9) (cleaned up).

5

### B.   Procedural History

6

7

8

9

10

11

12

13

14

15

Petitioner filed the Petition and Motion on June 7, 2022, to which Respondents David Shinn and the Attorney General of Arizona (collectively, "Respondents") filed their Responses in Opposition on August 17, 2022. (Pet.; Mot. for Stay; Resp. to Mot. for Stay.) The Magistrate Judge issued her R&Rs on September 27, 2022, recommending that the Court: (1) deny the Motion; (2) dismiss and deny the Petition with prejudice; and (3) deny a certificate of appealability "because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable." (Mot. to Stay R&R at 7; Pet. R&R at 22.) Petitioner timely filed his Objections on October 5, 2022, to which Respondents replied on October 13, 2022. (Doc. 20, Obj. to R&R ("Obj."); Doc. 21, Reply to Obj.)

16

## II.   LEGAL STANDARD

17

18

19

20

21

22

23

24

25

26

27

A district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). A court need review only those portions objected to by a party, meaning a court can adopt without further review all portions not objected to. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise."). For those portions of a Magistrate Judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress . . . intended to require a district judge to review a magistrate's report to which no objections are filed.").

28

## III.   OBJECTIONS

1       Petitioner objects to the R&R's conclusion that the Petition is time-barred.[1]

2   Specifically, Petitioner asserts that the Magistrate Judge should not have concluded that

3   the limitations period on Petitioner's Eighth Amendment claim began to run after the

4   Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). (*See* Obj. at 2–3.)

5   For the following reasons, the Court agrees with the Magistrate Judge.

6       AEDPA sets one-year statutes of limitations for different habeas claims. While a

7   petitioner may be required to present his habeas claim within a year after his conviction

8   became final,[2] AEDPA also provides for a one-year statute of limitations after the "date on

9   which the constitutional right asserted was initially recognized by the Supreme Court, if

10  the right has been newly recognized by the Supreme Court and made retroactively

11  applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). On June 25, 2012,

12  the Supreme Court decided *Miller*, but the Supreme Court did not hold that *Miller* applied

13  retroactively until it decided *Montgomery v. Louisiana*, 577 U.S. 190 (2016) four years

14  later. The Supreme Court has since clarified that "*Montgomery* did not purport to add to

15  *Miller*'s requirements." *Jones v. Mississippi*, 141 S. Ct. 1307, 1316 (2021). Further, when

16  interpreting statutory language functionally identical to § 2244(d)(1)(C), the Supreme

17  Court reasoned:

18          That clause—"if that right has been newly recognized by the Supreme Court
            and made retroactively applicable to cases on collateral review"—imposes a
19          condition on the applicability of this subsection. See Webster's Third New

20  ---
    [1] Petitioner appears to make only one objection to the separate R&R regarding his Motion.
21  (*See* Obj. at 2–3.) He asserts that the Magistrate Judge inaccurately stated that "Petitioner
    claimed that his [Eighth] Amendment claim is potentially meritorious," when in fact "this
    court stated that [Petitioner's Eighth] Amendment claim is meritorious." (*Id.*) Petitioner
22  mischaracterizes the Court's previous Order, wherein the Court summarized Petitioner's
    arguments in support of the Motion and stated that it was "unclear" if Petitioner's state
23  court proceedings were procedurally appropriate. (*See* Doc. 8, 07/08/2022 Order at 2.)
    Petitioner's objection is overruled, and the Report and Recommendation is adopted with
24  respect to the Motion.
    [2] Petitioner objects to the Magistrate Judge's threshold finding that he has not brought this
25  Petition within one year of the date his conviction became final on direct review. (*See* Obj.
    at 1.) Specifically, Petitioner argues that he is not challenging his conviction, rather "the
26  constitutionality of the Petitioner's sentence." (*Id.*) But the R&R's analysis on this point is
    merely applying § 2244(d)(1)(A), one of the "four possible starting dates for the beginning
27  of [AEDPA's] one-year statute of limitations period." (*See* Pet. R&R at 9–13.) Petitioner's
    objection to this portion of the R&R's analysis is overruled, and the Report and
28  Recommendation is adopted with respect to the Magistrate Judge's § 2244(d)(1)(A)
    analysis.

International Dictionary 1124 (1993) (the definition of "if" is "in the event that" or "on condition that"). It therefore limits [the clause's] application to cases in which applicants are seeking to assert rights "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255, ¶ 6(3). That means that ¶ 6(3)'s date—"the date on which the right asserted was initially recognized by the Supreme Court"—does not apply at all if the conditions in the second clause—the right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"—have not been satisfied. As long as the conditions in the second clause are satisfied so that ¶ 6(3) applies in the first place, that clause has no impact whatsoever on the date from which the 1–year limitation period in ¶ 6(3) begins to run. Thus, *if this Court decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his § 2255 motion.* He may take advantage of the date in the first clause of ¶ 6(3) only if the conditions in the second clause are met.

*Dodd v. United States*, 545 U.S. 353, 358–59 (2005) (analyzing 28 U.S.C. § 2255, ¶ 6(3), which mandated that the statute of limitations for habeas claims from federal detainees ran from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.") (emphasis added).

Petitioner objects to the Magistrate Judge's conclusion that *Dodd* and *Jones* control the outcome of the Petition. (*See* Obj. at 1–3; *see* Pet. R&R at 14–17.) Petitioner is incorrect. The one-year statute of limitations for habeas claims under *Miller* began to run on June 25, 2012, the date the case was decided. Petitioner filed his second PCR petition on July 5, 2012, in which he argued that he was entitled to retroactive relief under *Miller*. (Pet. R&R at 17 (citing PCR Not. II at 1–3).) In December 2013, the Court of Appeals denied Petitioner relief. (*Id.*) AEDPA provides that the statute of limitations was tolled on Petitioner's claim during the pendency of his PCR petition. *See* 28 U.S.C. § 2244(d)(2). Factoring in the pendency of his appeal, the statute of limitations for Petitioner's *Miller* claim expired in December 2014. (*See* Pet. R&R at 18.) The Supreme Court acknowledged "the potential for harsh results" under the statute but confirmed that "an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law will be time barred except in the rare case in which this Court announces a new rule of constitutional law and makes it retroactive within one year." *Dodd*, 545 U.S. at 359. Petitioner's objections to this portion of the R&R's analysis are overruled, and the Report

1   and Recommendation is adopted with respect to the Magistrate Judge's § 2244(d)(1)(C)

2   analysis.

3      Petitioner relatedly objects to the R&R's conclusion that *Montgomery* did not

4   recognize a new constitutional right. (Obj. at 3.) Petitioner is again incorrect. Petitioner

5   argues that *Miller* did not require courts to consider whether a juvenile's crime was the

6   product of "transient immaturity," yet *Miller* addresses this precise concern. (*See id.*);

7   *Miller*, 567 U.S. at 479–80 ("Although we do not foreclose a sentencer's ability to make

8   that judgment [whether a crime reflects transient immaturity or irreparable corruption] in

9   homicide cases, we require it to take into account how children are different, and how those

10  differences counsel against irrevocably sentencing them to a lifetime in prison."). *Miller*,

11  not *Montgomery*, set the statute of limitations for Petitioner's instant claim of a *Miller*

12  violation. Petitioner appends the opinion in *State v. Wagner*, 510 P.3d 1083 (Ariz. 2022)

13  to his Objections, but this decision does not negate AEDPA's statute of limitations, nor

14  does any Arizona precedent change how this statute of limitations runs for an alleged *Miller*

15  violation. (*See* Obj. at 4–5 (citing *State v. Valencia*, 386 P.3d 392 (Ariz. 2016)); Doc. 20,

16  Ex. E, *State v. Wagner* Ruling.)

17     Lastly, Petitioner objects to the Magistrate Judge's statement that Petitioner's

18  "[second] PCR was dismissed because it was untimely," instead asserting that the state

19  court addressed the merits of Petitioner's PCR. (Obj. at 2.) Not only does this point have

20  no effect on the outcome of the Petition, but the Magistrate Judge explained that the state

21  court also reached the merits of Petitioner's claim. (Pet. R&R at 5–6.) Petitioner's

22  objections are overruled and the Report and Recommendation is adopted in full.

23  **IV. CONCLUSION**

24     Finding the Petition to be time-barred, the Court overrules the Objections, adopts

25  the Report and Recommendations, denies the Motion and Petition, and dismisses the

26  Petition with prejudice.

27     **IT IS ORDERED** overruling the Objections to the Magistrate's Report and

28  Recommendation (Doc. 20).

1    **IT IS FURTHER ORDERED** adopting the Report and Recommendations

2 of the Magistrate Judge as the Order of this Court (Doc. 18; Doc. 19).

3    **IT IS FURTHER ORDERED** denying Petitioner's Motion for Stay of

4 Proceedings Pending Exhaustion of State-Court Remedies (Doc. 2).

5    **IT IS FURTHER ORDERED** denying Petitioner's Petition for Writ of

6 Habeas Corpus and dismissing the Petition with prejudice (Doc. 1).

7    **IT IS FURTHER ORDERED** denying a Certificate of Appealability and

8 leave to proceed in forma pauperis on appeal because dismissal of the petition is

9 justified by a plain procedural bar and jurists of reason would not find that

10 procedural ruling debatable.

11    **IT IS FURTHER ORDERED** directing the Clerk to enter Judgment

12 accordingly.

13    Dated this 10th day of January, 2023.

14

15

16

17              Susan R. Bolton

18             United States District Judge

19

20

21

22

23

24

25

26

27

28